**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>Melissa Jean Marks,<br><br>Debtor(s). | C/A No. 11-02619-JW<br><br>Chapter 13<br><br>**ORDER** |

This matter is before the Court on the Debtor's Motion to Determine Fees, Expenses, or Charges Pursuant to Bankruptcy Rule 3002.1(c) ("Motion"). Nationstar Mortgage, LLC ("Nationstar") filed a response to the Motion. Pursuant to Federal Rule of Civil Procedure 52, which is made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c), the Court makes the following findings of fact and conclusions of law:[1]

**<u>FINDINGS OF FACT</u>**

1. On October 5, 2007, Melissa Jean Marks ("Debtor") purchased property located at 209 Presidential Court in Round O, South Carolina ("Property"). To finance this purchase, Debtor executed a promissory note ("Note") in the amount of $76,000 to Old South Mortgage Corp. The Note is secured by a mortgage ("Mortgage") on the Property in favor of Old South Mortgage Corp. The Note and Mortgage both provide that the "Lender" is Old South Mortgage Corp. The Note further provides that the Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder." The Mortgage provides that Mortgage Electronic Registration Systems, Inc. (solely as nominee for Lender and Lender's

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and vice versa.

successors and assigns) ("MERS") "is the mortgagee under this Security Instrument" and thus contemplates the transfer of the mortgage.

2. On April 20, 2011, Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. In her schedules filed with the petition, Debtor lists Nationstar as a secured creditor holding a claim in the amount of $73,017, with such claim being fully secured by the Property valued at $80,000. The claim is not listed as contingent or disputed.

3. On June 21, 2011, the Court entered an order confirming Debtor's Chapter 13 Plan. The confirmed plan provides that "[t]he debtor is current on obligations to Nationstar Mortgage, LLC and will continue regular payments directly to that creditor." Since there was no pre-petition arrearage owed to Nationstar, the confirmed plan did not provide for the curing of any default.

4. On April 6, 2012, Debtor filed a *pro se* complaint regarding the Property against Old South Mortgage Corp. in the Colleton County Court of Common Pleas ("State Court Action"). Nationstar was not named as a defendant in that action. The complaint included the following causes of action: (1) Fraudulent Misrepresentations of Material Facts, (2) Mortgage and Note Invalid and Unenforceable Due to Fraudulent or Illegal Acts, and (3) Unconscionable Mortgage Contract. The allegations serving as the basis for these causes of action are summarized as follows: Old South Mortgage Corp. failed to disclose at closing that unidentified private investors were the intended owners of the mortgage, Debtor was promised a conventional loan and instead received a government loan from Fannie Mae, the filing of the Mortgage was illegal because it contained a false and misleading statement that Old South Mortgage Corp. was the

lender, and the Mortgage and Note are unconscionable because they were designed to deprive Debtor and the public of the true identity of the lender and contain oppressive terms. The complaint requested the following relief from the State Court: (1) a declaration that Debtor's Property is no longer security for the Mortgage because the Note and Mortgage falsely identify Old South Mortgage Corp as "Lender" and are therefore invalid and unenforceable; (2) an order removing the invalidated lien from the records of the Colleton County Register of Deeds; (3) a permanent injunction preventing any and all persons and entities from recording an assignment of mortgage or lien against Debtor's home arising from the invalidated Note and Mortgage; and (4) a permanent injunction against any and all persons and entities prohibiting foreclosure against Debtor's Property arising from the invalidated Note and Mortgage.

5. On May 9, 2012, Nationstar moved for relief from the automatic stay in this Court for the limited purpose of intervening in the State Court Action to defend its rights in the Mortgage and underlying obligation in such action. On May 25, 2012, the Court entered an order lifting the automatic stay to the extent necessary to allow Nationstar to appear, intervene and otherwise defend the State Court Action. The order provided that Nationstar was otherwise still bound by the automatic stay.

6. On May 29, 2012, Debtor filed Amended Schedules B and C to list the Debtor's claim against Old South Mortgage as personal property and to exempt that claim.

7. On August 2, 2012, the State Court entered an order allowing Nationstar to intervene in the State Court Action. The order stated that Nationstar could intervene as a matter of right because "[Debtor] seeks a declaratory judgment that could affect

Nationstar's claim under the Note and Mortgage." The order further stated that "Old South is a dissolved corporation and is not claiming any interest in the Note and Mortgage."

8. Beginning November 7, 2012, Nationstar filed several Notices of Postpetition Mortgage Fees, Expenses, and Charges in this case,[2] the last of which was filed on September 30, 2015 and states that it is intended to encompass all post petition attorneys' fees and costs incurred during Debtor's bankruptcy case and is meant to replace all previously filed notices. The September 30, 2015 Notice seeks $72,671 in attorneys' fees and $1,744 in costs incurred by Nationstar related to the State Court Action.

9. On February 27, 2013, the State Court denied Debtor's Motion for Leave to Amend Complaint to add Fannie Mae as a party in the State Court Action, finding that it would be futile to add Fannie Mae for the following reasons: (1) Debtor lacked standing as a result of her Chapter 13 Bankruptcy filing and (2) Nationstar is the proper party to enforce the Note and Mortgage, because it is the holder of the original Note, endorsed in blank.

10. On October 9, 2013, the State Court granted Nationstar's Motion for Summary Judgment as to all causes of action raised by Debtor in the State Court Action because the claims were barred by res judicata due to Debtor's confirmed Chapter 13 plan which provided for mortgage payments to Nationstar and Debtor's fraud claim was barred for failure to establish damages ("Summary Judgment Order"). The State Court further determined that Nationstar was the holder of the original Note, which was

[2] Nationstar filed Notices on November 7, 2012, April 22, 2013, September 26, 2013, September 27, 2013, November 6, 2013, December 17, 2013, and April 16, 2014.

endorsed in blank, that the Note and Mortgage were enforceable as a matter of law, and that Nationstar would be the proper party to enforce the Note. By separate order, the State Court also denied Debtor's Motion to Dismiss Nationstar as an intervening party.

11. Debtor filed a Motion for Reconsideration of the State Court's orders, which was denied by the State Court on November 6, 2013.

12. Thereafter, Debtor filed a timely Notice of Appeal of those orders with the Court of Appeals for the State of South Carolina.

13. On November 6, 2013, Debtor filed a Motion to Determine Fees, Expenses, or Charges Pursuant to Bankruptcy Rule 3002.1(c), objecting to certain 3002.1 Notices filed by Nationstar.

14. Debtor amended her Motion to Determine Fees, Expenses or Charges Pursuant to Bankruptcy Rule 3002.1(c) on November 19, 2013 to include her objection to any future notices filed on behalf of Nationstar and to request that the Court issue an order clarifying any fees and costs owed by Debtor to Nationstar.

15. On March 3, 2014, by consent order, the Court removed this matter from the active trial docket in this court to await the determination of the appeal of the State Court action.

16. On May 21, 2015, Nationstar filed an Amended Response to Amended Motion to Determine Fees, Expenses or Charges Pursuant to Bankruptcy Rule 3002.1(c). Nationstar stated therein that it was filing "this pleading to ensure that, upon the awarding of attorneys' fees to Nationstar by the State Court, the parties may still restore this matter to [this Court's] trial docket for a determination that the fees incurred are the additional debt of the Debtor."

17. The Court of Appeals subsequently denied Debtor's appeal of the State Court orders by order entered June 3, 2015. Debtor's petition for rehearing was also denied by order entered September 17, 2015, thus making the Summary Judgment Order and order denying Debtor's Motion to Dismiss Nationstar final orders.

18. On October 14, 2015, Debtor moved this Court to restore this matter to the active docket and requested a determination of Debtor's liability for fees disclosed in the Notices filed by Nationstar. Debtor asserts that she does not have any liability to Nationstar for attorney's fees or costs incurred by Nationstar in connection with the State Court Action because she is not in default under the Note and Mortgage and Nationstar cannot collect fees from Debtor because it is not the "Lender" under the terms of the Note and Mortgage.

19. Nationstar responded to Debtor's Motion, asserting that the terms of the Note and Mortgage allow it to collect reasonable attorneys' fees and costs from Debtor. Specifically, Nationstar relies on Section 9 of the Mortgage, which provides in pertinent part:

> **9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** ***If*** (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) ***there is a legal proceeding that might significantly affect Lender's Interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws and regulations)***, or (c) Borrower has abandoned the Property, ***then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument***, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. ***Lender's actions can include, but are not limited to***: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) ***paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this***

> ***Security Instrument***, including its secured position in a bankruptcy proceeding…. Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

(emphasis added).

Nationstar also relies on Section 6(E) of the Note, which provides:

> **6. BORROWER'S FAILURE TO PAY AS REQUIRED**
> …
> **(E) Payment of Note Holder's Costs and Expenses**
> If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

20. Debtor has completed her plan payments and received a Chapter 13 discharge by order entered on May 28, 2015. The only outstanding issue in her bankruptcy case is the resolution of this Motion.

## CONCLUSIONS OF LAW

As the prevailing litigant in the State Court action, Nationstar seeks reimbursement from Debtor for $72,671 in attorneys' fees and $1,744 in costs incurred by Nationstar in connection with its defense of that action. To assert this claim, Nationstar filed Notices of Postpetition Mortgage Fees, Expenses, and Charges, pursuant to Federal Rule of Bankruptcy Procedure 3002.1 in Debtor's bankruptcy case.[3] Debtor has challenged whether the fees, expenses, and charges are required to be paid and asks this Court to find that she is not liable to Nationstar for the amounts set forth in the Notices pursuant to Federal Rule of Bankruptcy Procedure 3002.1(e)[4].

---

[3] Nationstar's argument that Fed. R. Bankr. P. 3002.1(e) is not applicable is addressed *infra* at footnote 14.
[4] Fed. R. Bankr. P. 3002.1(e) provides:

***I. Debtor's Liability to Nationstar for Attorneys' Fees Under the Note & Mortgage***

Under the American Rule, "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." Baker Botts L.L.P v. ASARCO LLC, 135 S.Ct. 2158, 2164 (2015). Nationstar asserts that Section 6(E) of the Note and Section 9 of the Mortgage provide a contractual basis for its entitlement to reasonable attorney's fees and costs in this case. Both the Note and the Mortgage are contracts which are governed by general principles of contract interpretation. Under South Carolina law,[5] "where an agreement is clear on its face and unambiguous, 'the court's only function is to interpret its lawful meaning and the intent of the parties as found within the agreement.' " Miles v. Miles, 393 S.C. 111, 711 S.E.2d 880, 883 (2011) (quoting Smith–Cooper v. Cooper, 344 S.C. 289, 543 S.E.2d 271, 274 (Ct.App. 2001)). If a contract can be understood in more ways than one, if its terms are indefinite, or if it could have a double meaning, then a contract is ambiguous, and the court may look outside the four corners of the document to determine the intent of the parties. Estate of Revis v. Revis, 484 S.E. 2d 112, 116 (S.C. Ct. App. 1997).

***a. Section 6(e) of the Note***

Section 6(e) of the Note gives the "Note Holder" the right to be paid back by Debtor for all of its costs and expenses, including reasonable attorney's fees, *in enforcing*

---

> On motion of the debtor or trustee filed within one year after service of a notice under subdivision (c) of this rule, the court shall, after notice and a hearing, determine whether payment of any claimed fee, expense, or charge is required by the underlying agreement and applicable nonbankruptcy law to cure a default or maintain payments in accordance with § 1322(b)(5) of the Code.

[5] The Mortgage expressly provides that it is governed "by federal law and the law of the jurisdiction in which the Property is located," which is South Carolina. The note does not include a provision addressing the governing law; therefore, the Court must apply the most significant relationship test. See Schneider v. Deutsche Bank Nat. Trust Co., 572 Fed. Appx. 185, 189 (D.S.C. 2014) (applying most significant relationship test to determine governing law of note where unspecified in the note). Since Debtor is a South Carolina resident, the Property is located in South Carolina, and the note was executed in South Carolina, South Carolina has the most significant relationship to the facts of this case and its law governs in this case. Id.

*this Note*. The "Note Holder" is defined by the Note as "the Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note." In its Summary Judgment Order, the State Court determined that Nationstar was the holder of the original Note, which was endorsed in blank, that the Note and Mortgage were enforceable as a matter of law, and that Nationstar would be the proper party to enforce the Note. The State Court's order is a final order and Debtor is bound by this determination.

As Note Holder, Nationstar's right to be paid back by Debtor for attorneys' fees and costs under Section 6(e) is not without limitation. Its right to collect fees and costs is subject to the following condition under the Note's terms: the Note Holder must have "*required [Debtor] to pay immediately in full as described above.*" Although not explicitly stated, this provision necessarily references the preceding paragraphs (B) and (C) in that Section defining a default under the Note[6] and setting forth the circumstances under which the debt may be accelerated and required to be paid "immediately in full."[7]

---

[6] None of the other preceding paragraphs addresses a requirement for Debtor to pay the debt immediately in full.

[7] The preceding paragraphs in **Section 6, Borrower's Failure to Pay as Required**, are as follows:

> **(A) Late Charge for Overdue Payments**
> If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
> **(B) Default**
> If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
> **(C) Notice of Default**
> If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
> **(D) No Waiver by Note Holder**
> Even if, at the time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

The Court finds these provisions unambiguous and therefore applies a plain and ordinary interpretation of their terms. Reading these provisions together, the Court finds that the Note Holder must have required Debtor to pay the debt immediately in full based upon Debtor's default in order for its right to collect fees and costs to be triggered under the Note. See In re Grice, C/A No. 08-00833-JW, slip op. at 3 (Bankr. D.S.C. Apr. 9, 2008) (interpreting a similar promissory note and finding that a creditor had not demonstrated that it had a contractual right to collect attorney's fees where the debtor was not in default and creditor's right to payment in full of attorney's fees and costs was conditioned upon the debtor's default). Since this condition has not been met in this case, Nationstar cannot recover attorney's fees and costs under Section 6(e) of the Note.

***b. Section 9 of the Mortgage***

Nationstar further relies on Section 9 of the Mortgage to support its claim for attorneys' fees and costs.[8] Specifically, Nationstar relies on subpart (b) of Section 9, which allows the Lender to do and pay for whatever is reasonable or appropriate to

---

[8] Section 9 provides in pertinent part:

> **9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's Interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws and regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding…. Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

protect its interest in the Property and rights under this Security Instrument if there is a legal proceeding that might significantly affect Lender's Interest in the Property and/or rights under this Security Instrument. Section 9 also provides that amounts disbursed under this section become the additional debt of the Borrower secured by the Mortgage. Based on its review of Debtor's State Court Complaint and the Summary Judgment Order, the Court finds that Debtor's State Court Action was a legal proceeding that might significantly affect the Lender's interest and rights because Debtor sought a declaratory judgment from the State Court that the Note and Mortgage were invalid and unenforceable. In its order allowing Nationstar to Intervene, the State Court expressly concluded that the relief requested by Debtor could affect Nationstar's claim under the Note and Mortgage.[9] The Debtor is bound by this determination. The remaining issue implicitly raised by Debtor's arguments is whether Nationstar is entitled to assert the "Lender's" rights under the Mortgage.

***c. Nationstar has rights of Lender to enforce Section 9 of the Mortgage***

Debtor argues that Nationstar is not the owner of the Note and Mortgage because it is not a contractual party to the Mortgage entitled to reimbursement of fees under the Mortgage. Based upon the terms of the Mortgage, South Carolina precedent, and the findings of the State Court in its final orders, Nationstar, as holder of the Note and thus holder of the Mortgage, is entitled to enforce the Mortgage, including Section 9.

*i. Terms of Mortgage Contract*

The Mortgage defines "Lender" as "Old South Mortgage Corporation," and the Mortgagee is defined as MERS (solely as nominee for Lender and Lender's successors

[9] This finding from the State Court's order allowing Nationstar to intervene is quoted in its order granting Nationstar's motion for summary judgment.

and assigns). The Mortgage contemplates that the party entitled to receive payments due under the Note and the "Lender" in the Mortgage are one and the same, providing that "[t]he Note states that Borrower owes *Lender*…," and "[t]his Security Instrument secures *to Lender*: (i) the repayment of the Loan, and all renewals, extensions, and modifications *of the Note*; and (ii) the performance of Borrower's covenants and agreements under this Security Agreement *and the Note*." In other words, upon transfer of the Note to Nationstar, Nationstar acquired the rights as "Lender" under the Note and Mortgage to enforce those contracts, including Section 9 of the Mortgage.

*ii. South Carolina Precedent*

Furthermore, Nationstar is entitled to collect attorneys' fees and costs under the Mortgage under state law by virtue of its status as holder of the Note. Under South Carolina law, "the transfer of a note carries with it a mortgage given to secure payment of such note." Ballou v. Young, 20 S.E. 84 (S.C. 1894); see also Schneider v. Deutsche Bank Nat. Trust Co., 572 Fed. Appx. 185, 190 (D.S.C. 2014) (finding that "the assignment of a note secured by a mortgage carries with it an assignment of the mortgage," and because the creditor was the proper holder of the note, it was also the holder of the mortgage); Bank of Am., N.A. v. Draper, 746 S.E.2d 478, 481 (S.C. Ct. App. 2013) (same); South Carolina Nat'l Bank v. Halter, 359 S.E.2d 74, 77-78 (S.C. Ct. App. 1987) (finding that an assignment of a note occurs where note is transferred by negotiation in accordance with S.C. Code § 36-3-202); Hahn v. Smith, 154 S.E. 112 (S.C. 1930) ("The assignment of the bond or note carries with it the mortgage, but the assignment of the mortgage as distinct from the debt which it secures is nugatory and

confers no rights upon the assignee."). Debtor has presented no contrary authority. Therefore, Nationstar, as holder of the Note, can enforce the Mortgage.

*iii. State Court Orders*

Moreover, Debtor is bound by the State Court's determination in its final orders that Nationstar is entitled to enforce the Mortgage. In its order denying Debtor's Motion to Amend Complaint to add Fannie Mae as a defendant, the State Court expressly found that Nationstar is the proper party to enforce the Note *and Mortgage*.[10] It further found in its Summary Judgment Order that "[i]t is well-established that the mortgage follows the note and that assignment of the mortgage is not required," citing Union Nat'l Bank v. Cook, 110 S.C. 99, 96 S.E. 484 (1918) and Midfirst Bank, SSB v. S.W. Haynes & Co., Inc., 893 F.Supp. 1304, 1318 (D.S.C. 1994). It also noted that "in July 2012, the South Carolina Supreme Court again held that an 'assignment of a mortgage does not need to be recorded, and failure to do so has no effect on the rights of the assignee,' " citing BAC Home Loan Servicing, L.P. v. Kinder, 731 S.E.2d 547, 549 (S.C. 2012).

***d. Nationstar may Enforce Mortgage as Servicer and Note Holder***

Alternatively, Nationstar can enforce Section 9 of the Mortgage as the servicer and Note Holder. According to the Summary Judgment Order, Nationstar is both the

[10] This finding set forth in the Order Denying [Debtor's] Motion to Amend, entered February 27, 2013, was expressly referenced in the Summary Judgment Order. The Order Denying [Debtor's] Motion to Amend was not appealed and is a final order.

holder of the Note and the servicer in this case.[11] The South Carolina Court of Appeals has previously defined a "servicer" as follows:

> "[A] servicer is defined as the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan). Servicing is defined as receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts … and making the payments of principal and interest ***and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan***."

Draper, 746 S.E.2d at 481 (emphasis added) (quoting Bryant v. Wells Fargo Bank, N.A., 861 F.Supp.2d 646,658 (E.D.N.C. 2012)); see also In re Neals, 459 B.R. 612, 617 (Bankr. D.S.C. 2011) (finding that a servicer is a "party in interest" and has standing to move for relief from stay by virtue of its pecuniary interest in collecting payments under the terms of the note and mortgage). As servicer, Nationstar stands in the shoes of the Lender and is authorized and obligated to "do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property." See Khan v. Wells Fargo Bank, N.A., No. H-12-1116, 2014 WL 794193 (S.D. Tex. Feb. 26, 2014) (interpreting an identical "Section 9" of a Deed of Trust as entitling the servicer to attorneys' fees and costs for defending a lawsuit brought by borrower to challenge servicer's conduct and validity of the Deed of Trust). Section 9 of the Mortgage provides that the Lender's payment of reasonable attorneys' fees to protect its interest becomes additional debt of the Debtor payable upon notice. Since Nationstar, as servicer, is responsible for collecting payments from the borrower *as may be required pursuant to the terms of the loan*, Nationstar is authorized to

[11] Paragraph 20 of the Mortgage provides that the Note can be sold and may result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. It further contemplates that the loan servicer may be changed unrelated to the sale of the Note, and the loan servicer may not be the purchaser of the Note. In other words, under the terms of the Mortgage, the holder of the Note and the servicer could be different parties. However, in this case, the State Court has concluded that Nationstar is both the servicer and the Note Holder.

collect payments required under Section 9.[12] Accordingly, the Court concludes that Nationstar may also collect reasonable attorneys' fees and costs from Debtor arising from the State Court action based upon its status as servicer and Note Holder.[13]

***II. Reasonableness of Attorneys' Fees Request***

Nationstar bears the burden of demonstrating that the attorneys' fees and costs are reasonable. In re Grice, C/A No. 08-00833-JW, slip op. (Bankr. D.S.C. Apr. 9, 2008) (citing In re Sanchez, 372 B.R. 289, 303 (Bankr. S.D. Tex. 2007)); In re Hale, No. 14-04337-HB, 2015 WL 1263255 (Bankr. D.S.C. Mar. 16, 2015) (finding that 3002.1 notices must provide adequate descriptions for contractual charges). Nationstar has attached to its final Notice multiple affidavits of counsel with time sheets to evidence the nature of the work performed, the time spent, and the amounts charged by its attorneys. The affidavits detail the services performed, who performed the work, the time spent on the task, and the rate charged for such work. Based upon the evidence presented, the Court finds that Nationstar's request for attorneys' fees is adequately documented. The issue is whether the amounts requested are reasonable under the circumstances of this case.

Where a contract provides for "reasonable" attorney's fees, the Court considers the following six factors to determine the reasonableness of the request for attorney's fees: "(1) the nature, extent and difficulty of the legal services rendered; (2) the time and

---

[12] Section 20 of the Mortgage expressly contemplates that the servicer has obligations under the Mortgage beyond merely collecting payments, by stating that "a sale of the Note may result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument, and *performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law*." (emphasis added)

[13] Debtor argues that she does not owe the fees because Nationstar did not incur all of the fees requested, based upon Nationstar's redaction of the bill recipient in its supporting documentation. Based on the Court's conclusion that Nationstar is authorized to collect attorneys' fees and its review of the supporting documentation which plainly evidences attorneys' fees incurred in connection with the litigation between Debtor and Nationstar, the Court finds this argument unconvincing.

labor necessarily devoted to the case; (3) the professional standing of counsel; (4) the contingency of compensation; (5) the fee customarily charged in the locality for similar legal services; and (6) the beneficial results obtained." Dedes v. Strickland, 307 S.C. 155, 414 S.E.2d 134, 137 (1992). While "[c]onsideration should be given to all six criteria in establishing reasonable attorney's fees[,] none of these six factors is controlling." Baron Data Sys., Inc. v. Loter, 297 S.C. 382, 377 S.E.2d 296, 297 (1989).

Debtor has not challenged the hourly rate or amount of time expended by Nationstar's attorneys, and only claims that the total amount is inherently unreasonable because it exceeds the principal balance of the debt. The Court finds the attorneys' rates and billings are reasonable in light of the nature of the litigation, which occurred over a period of several years with protracted motions practice, discovery, mediation, and an appeal, as well as the attorneys' experiences, abilities, and reputations, and customary fees for such cases. The time and labor required to defend the matter were significant, particularly because Debtor filed numerous motions and vigorously contested each motion filed by Nationstar. Debtor made the strategic decision to file the State Court Action to attempt to invalidate the Note and Mortgage despite the fact that she faced no risk of foreclosure because she was current on the Note, was protected by the automatic stay during the bankruptcy case, and had been regularly making payments to Nationstar since October of 2009.[14] In doing so, Debtor forced Nationstar to expend considerable amounts of money to preserve and protect its rights under the Note and Mortgage. Under

[14] Debtor argues that she was merely seeking a declaratory judgment to ascertain the true owner of her mortgage in order to ensure that her payments were being properly applied and to the correct party. However, in her State Court Complaint, Debtor expressly requests the state court to declare the Mortgage and related Note invalid and unenforceable, to remove or clear from its records the invalidated lien against Debtor's home and issue an injunction prohibiting the recording of an assignment of mortgage against Debtor's home arising from the invalidated Mortgage Instrument.

the circumstances of this case, Nationstar has met its burden of establishing that the number of hours claimed for attorney's fees is reasonable, with one exception—the Court finds that the time entries related to Nationstar's unsuccessful pursuit of a title insurance claim relating to the State Court Action are not reasonable to charge to Debtor. Additionally, in reviewing the time records, the Court further observed some inconsistencies in the hourly rate being charged by the attorneys and has made adjustments as appropriate.

Debtor further argues that she does not owe any fees to Nationstar because Nationstar failed to comply with Rule 3002.1 by filing notices that were untimely, vague, confusing, and lacked adequate documentation. Rule 3002.1(b) provides that the notice shall be served within 180 days after the date on which the fees, expenses, or charges are incurred. Nationstar's first Notice was filed November 7, 2012, and included a request for attorneys' fees incurred between May 2, 2012 and November 6, 2012. It appears that Nationstar's Notice is untimely as to amounts incurred between May 2, 2012 and May 11, 2012 (the 180th day prior to the filing of the Notice). Notices filed between November 7, 2012 and March 4, 2014 appear to have been timely filed. On March 4, 2014, the Court entered a consent order regarding Debtor's Motion to Determine Fees, Expenses and Charges, wherein the parties agreed that the matter was not ripe for determination as the State Court had not yet awarded attorney's fees to Nationstar. This order removed the matter from the active docket, which saved the parties' the costs of filings and litigation related to Debtor's responses or Motion while the State Court action was still pending. By agreeing to this order, the Court finds that Debtor waived any right to object to the timeliness of the filing of any Notices filed after March 3, 2014.

Nationstar's final Notice filed on September 30, 2015 was filed at the direction of the Court pursuant to the Order entered August 31, 2015. In that Order, the Court expressly directed Nationstar to file a comprehensive Notice containing all fees requested and preserved Debtor's present objections to the Notices on record. Accordingly, pursuant to Rule 3002.1(i), the Court will preclude Nationstar from recovering attorneys' fee based on requests that were untimely filed for fees incurred between May 2, 2012 and May 11, 2012, and finds that a further reduction of the amount Nationstar is entitled to collect from Debtor is warranted in the amount of $2,524.50.

Applying the factors set forth in Dedes v. Strickland, the Court concludes that attorneys' fees of $62,475 and costs of $1,744 are reasonable under the facts of this case and may be properly charged to Debtor under the terms of her Mortgage contract with Nationstar.[15]

[15] In light of its ruling in favor of Nationstar herein, the Court finds it unnecessary to decide at this time Nationstar's alternative argument that Rule 3002.1 does not apply because no arrearage existed at time of filing and a cure of default was not provided for in the bankruptcy plan. See In re Hale, No. 14-04337-HB, 2015 WL 1263255 (Bankr. D.S.C. Mar. 16, 2015) (noting split in authority regarding whether Rule 3002.1 applies in cases where no arrearage was cured through the plan). Furthermore, based on Nationstar's course of conduct in this case over the past three years, Nationstar is barred by equitable estoppel from now claiming that Rule 3002.1 does not apply. The Court notes that in its Amended Response to the Amended Motion to Determine Fees, Expenses or Charges, Nationstar indicated its intent to pursue a determination under Rule 3002.1 that the fees incurred in the State Court action are the additional debt of the Debtor. In addition, in its Supplemental Response to Debtor's Amended Motion to Determine Fees, Expenses or Charges pursuant to Bankruptcy Rule 3002.1, Nationstar implicitly conceded that Rule 3002.1 is applicable in this case by referring to its rights to file a Rule 3002.1 statement following the conclusion of the State Court action. Furthermore, Nationstar filed multiple Rule 3002.1 statements over a period of three years, without raising any argument that Rule 3002.1 did not apply in its responsive pleadings to the Motion or otherwise. The argument that Rule 3002.1 does not apply was not raised by Nationstar until the filing of the Joint Statement of Dispute on February 11, 2016, one week prior to the hearing on the Motion. Both Debtor and the Court have relied upon Nationstar's position that Rule 3002.1 applies and its course of conduct has prolonged this proceeding. See In re Varat Enterprises, Inc., 81 F.3d 1310, 1317 (4th Cir. 1996) ("The doctrine of equitable estoppel allows 'a person's act, conduct or silence when it is his duty to speak,' to preclude him from asserting a right he otherwise would have had against another who relied on that voluntary action.")

**CONCLUSION**

Based upon the foregoing, Debtor's Motion Determine Fees, Expenses, or Charges Pursuant to Bankruptcy Rule 3002.1(c) is granted in part and denied in part. The Court hereby determines pursuant to Rule 3002.1(e) that Debtor's payment of attorneys' fees of $62,475 and costs of $1,744 is required by the Mortgage and applicable nonbankruptcy law.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**04/21/2016**




Entered: 04/21/2016

US Bankruptcy Judge
District of South Carolina